Shauck, J.
The original case for the disbarment of the respondent is very fully reported in 80 Ohio State, 492 to 675. The report gives the *248 charges upon which he was heard, a sufficient statement of the evidence relating thereto, the conclusions of fact to which the evidence led and the considerations which were regarded as requiring the order of disbarment. If the respondent had been dealt with for a single act of wrong-doing, inconsistent with a life of general rectitude, perhaps an order for his suspension for a definite term would have been thought sufficient to serve as a corrective to him, and to maintain the required standard of professional ethics. But a reference to the original case will disclose that he was found guilty of numerous acts of grave impropriety and of long perseverance in a course of reprehensible conduct. An order of suspension would have afforded him opportunity, during its operation, to insist upon the propriety of his own ethical standards as against those prescribed by the court, and, upon its expiration, to resume practice without any acceptance of the standard fixed by the judgment of the court. Having been removed from the bar, he may in accordance with what we conceive to be correct practice file a written motion expressly accepting the judgment of the court as to ethical requirements, and offering such reasons as he may have for the conclusion that his reinstatement is justified by the considerations upon which a select few of the masses of the citizens óf the state are permitted to enter and remain at the bar to participate in the high function of administering justice. Although the terms of his motion accepting the judgment of the court as to the -impropriety of the conduct for which he was removed mark him as a man who is not easily *249 carried away with enthusiasm, we accept, them,- as-sufficient for the present case.
What questions does his motion require us to determine? Certainly not the question' suggested by its concluding paragraph. So - often and so clearly have courts pointed out that in proceedings of this character the punishment of the offending lawyer is neither involved nor considered that repetition is not necessary. It would perhaps be unavailing to prevent appeals for sympathy upon that ground in future cases. The respondent and all who give attention to this inquiry must be fully aware that during the entire term of his disbarment he has been in the full and uninterrupted enjoyment of all the inherent rights of citizenship. Nor can there be presented for determination here any theological question respecting the remission of sin or the facility with which it may be achieved. The general question now presented has been presented twice already. It was presented when the respondent was admitted to the bar and again when the order of his disbarment was entered. That general question is, will the public interest in the orderly and impartial administration of justice be conserved by his participation therein in the capacity of an attorney and counselor at law? In a few jurisdictions the requirement of learning in members of the bar is remitted, but wherever there is civilization one is required to have such character as is believed to warrant the expectation that his own interests will be held subordinate to those of his clients and of the public, that neither his zeal for victory nor his love of gain will compensate him for wrong *250 to an adversary or for a deception practiced upon the court or for any perversion of justice, and that he will in all respects aid judges in meeting the authorized expectation that they will “administer justice without respect to persons and without fear or favor.” When the respondent was admitted to the bar he was believed to be of that character. When it appeared that he was not he was removed. Is there good reason to believe that since the order of his disbarment was made, eighteen months ago, there have gone on in his character such reforming and regenerating processes as should restore the confidence upon which he was originally admitted? The question calls for attention to the character of his offenses, though it does not require that they be again stated in detail. He procured the bringing of a suit upon a cause of action which he knew had been fully discharged, and this he did by inducing a reputable member of the bar, .who was not aware of the baseless character of the claim to prepare and sign the 'petition and make the required affidavit thereto. His motive for this was a stipulated compensation so large as to mark him as a mere tradesman in the ranks of an honorable profession. He persevered through years, and in many cases in baiting judges by procuring affidavits of prejudice for which there was neither foundation nor appearance of it. He scandalized the administration of justice by appealing from judgments rendered in the orderly course of procedure to crowds summoned by blare of trumpet to street corners and vacant lots where by false speeches, pamphlets and cartoons he heaped contempt and *251 ridicule upon judicial proceedings which were-con-: ducted with fairness and propriety, and which were perhaps even free from error. This he did when he had many case's pending in the courts in which he had contracts for contingent fees and a large financial interest in the judgments to be rendered in them. Notwithstanding our finding on the third, sixth, ninth and twelfth specifications our credence has been invited to the claim that this course was not pursued to affect pending cases, or to impress the public with the understanding that cases in which he was retained must be tried by rules more favorable than those applied in other cases; but that it was done to give expression to his yearning as a citizen for the elevation of the judiciary and to perform his duty to aid judges in administering justice without fear! He maligned one of the common pleas judges of his county as a “political judge,” and when brought to account for so doing, instead of frankly confessing the falsehood, he attempted a justification of his imputation by bringing witnesses into our presence to testify that the judge named and his associates, acting together, had appointed competent jury commissioners, giving such, and only such, attention to their political affiliation as would show compliance with the statute which required the selections to be made from both political parties. Character building does not appear to be an instantaneous process, and conduct thus briefly outlined came as the fruition of more than twenty years of the professional life he lived. Common observation forbids the assumption that virtues develop more rapidly than vices. It was observa *252 tion upon persistency in wrong-doing by those who are accústómed to it that suggested to the prophet- the unchangeable colors of the leopard’s spots.
But we are not left to conjecture with respect to the effect of discipline upon the character and conduct of the respondent. The filing of the original charges against him' called upon us to act without fear or favor, and suppressing all emotional and sentimental promptings, to exercise impartially our best judgment respecting them, knowing that nothing which is required by the orderly and fearless administration of justice could be unjust to him, and that any action adverse to him would be unjust if not so required. During their pendency, numerous letters were received by members of the court appealing to sympathy in his behalf. Some of these were accompanied, some followed, by letters of apology and explanation, the explanation being that he had solicited the letters. Even since his counsel argued and submitted the motion we are now considering,'he has approached this court with the suggestion,'made personally to one of its members, that by an early disposition of the case, we might avert unfavorable comment upon the court by a political convention. The motion asks us to decide that he should be permitted to exercise important functions in the administration of justice at a time when it is within familiar observation that, even according to the standards which are maintained in athletic contests, an offending player is expelled from the field for baiting the umpire.
In August, 1907, the .American Bar Association, having a membership in nearly, if not quite all, *253 the states of the Union, adopted canons of professional ethics and suggested an oath of admission consistent with' them. In July, 1909, within a month after the order of disbarment in the present case, the canons and the oath were unanimously adopted by the Bar Association of this state. Pursuant to the unanimous recommendation of that association the oath of admission has been adopted by this court. Both the canons and the oath may be found in the reports of the various associations by which they have been adopted. In neither canons nor oath is there addition to. the implied obligations of an attorney as they have been understood for generations by the honorable and the right-minded who appreciate the importance of the lawyer’s function. If may be interesting to those who care to pursue the subject further to contrast the clearly and correctly expressed statement of the lawyer’s duty as presented in the code and oath with the conduct of the respondent as more fully detailed in the original report of his case. We appreciate and commend the high purposes of our brethren of the bar in the promulgation of the code and oath, and we shall be guilty of a palpable dereliction from duty if, upon any occasion, we fail to uphold the standards of professional duty which they suggest. Finding no reason to believe that the public interests will be conserved by the respondent’s participation in the administration of justice we overrule his motion.

Motion overruled.

Summers, C. J., Crew, Spear, Davis and Price, JJ., concur.